Brockenbrough, J.
I strongly incline to the opinion, that debt would still lie, in this case, on the bond, in the name of the obligee against the principal obligor, although the bond itself was given and transferred to the surety, as an advancement on his marriage with the obligee’s daughter. The obligation has never been discharged, and the very reason why it was given and transferred to the son in law, was, that it was the evidence of a subsisting debt due from the principal obligor to the obligee. By the gift and transfer an equitable right passed from the obligee to the surety, to recover the money, and on its recovery, to appropriate it; hut the legal remedy still remained.
If .in this I should be wrong, still this action seems to me to be misconceived, and no recovery can be had on either of the counts of the declaration. All but the fourth are out of the question. The proof does not fit any one of them. As to so much of the fourth count as charges an indebitatus assumpsit for money paid, laid out and expended, by Ellis to Butterworth’s use, the cases of Taylor v. Higgins, 3 East 169. and Maxwell v. Jameson, 2 Barn. & Ald. 51. are conclusive to shew, that it is not supported by proof that the bond was transferred to the surety, although the consideration of the transfer was a valuable one, it not being money, or an equivalent of the same character. How can it be *108 saac^’ 'monetJ> or other thing, has been paid or laid out by Ellis to the use of Butterworth ? The obligee Billyms made an advancement to Ellis of the bond in which x he was bound as a surety for Butterworth. This transfer, as between the obhgee and Ellis, was founded on the valuable consideration of marriage, but yet it cannot be considered without á singular perversion of terms, as any thing expended, or laid out, or paid by Ellis. It is neither money, nor any thing convertible into money. If the giving of a bond with a warrant of attorney (as was done in the two cases above referred to) will not support the action for money paid, laid out and expended ; and the receipt of East India stock will not support the action for money had and received (as was the case in Nightingal v. Devisme, 5 Burr. 2589); much less can the receipt by Ellis of an unpaid bond, as an advancement from the obligee, be considered as a payment by Ellis to the use of Butterworth, or as any thing had and received by Butterworth to the use of Ellis.
I am of opinion, that the judgment be reversed, the verdict set aside, and the cause remanded to the circuit superiour court. When it goes back, it will be for the plaintiff to decide, whether she will apply for leave to file a-specia! count, or pursue some other course for the recovery of the money,
Carr, J.
The question is, Whether this action will lie against the principal obligor in a bond, for the surety therein bound, to whom the obligee has given the bond, on the marriage of the surety with his daughter, and in consideration of the marriage? I incline to think it may, under the count for money paid for the use of the defendant. The books treat this action of assumpsit upon a contract raised by law, as an equitable action; indeed, as almost a bill in equity. Lord Mansfield, in Moses v. Macfarlan, 2 Burr. 1008. says, “If the defendant be under an obligation, from the ties of natural jus *109 tice to refund, the law implies a debt, a,nd gives this action, founded in the equity of the plaintiff’s case, as it were upon a contract (quasi ex contractu), as the Ro.1 . „ A . . . . man law expresses it. In another part oi the opinion, he says, “the question is, whether ex cequo et bono the defendant ought to retain the money.” I know very well, that the decision of the court in that case has been overruled upon the main point; but I do not consider that as impugning the general doctrine as to the action of assumpsit. It was admitted on all hands, that if the surety had paid money for the bond, and thus become the owner, he might have maintained this action. How does the present case differ? As a consideration for the. marriage of Ellis with his daughter, Billups was willing to give 400 dollars: this bond represented that sum; and he passed it to Ellis, not by assignment but transfer. By this transfer, the obligee parted with the bond, which constituted his legal evidence of the debt, and parted also with his equity to recover the money. So far as regards his claim, then, the bond was discharged, the legal title extinguished; he could not sue for the debt either at law or in equity, for he had parted with it for a valuable consideration, which is but another mode of saying he had. been paid the value of it. Then, if the obligee was satisfied for the bond, and that by the surety, what difference, ex cequo et bono, can it make to the obligor, the real debtor, in what way this was effected ? The surety who was bound with him for his debt, has discharged the claim of the obligee against him. Has not the surety hereby acquired, ex cequo et bono, a claim upon him for this sum ? And how is he to recover it? He has possession of the bond, but no legal title to it: he cannot sue on it in his own name. If it were admitted, that he might sue in the name of the obligee (of which I am by no means clear, that claim being satisfied by the transfer), still this shews that he is asserting an equitable claim, in the name of another, *110 for his own benefit, and under the awkward predicanaent of being the beneficial plaintiff, while he is a nominal defendant. Where is the difference in reason or law, in suffering him to prosecute his claim in this equitable action? Can it prejudice the defendant in bis defence? On the contrary, lord Mansfield says, “It is the most favourable way in which he can be sued: he can be liable no further than the money he has received, and against that he may go into every equitable defence upon the general issue; he may claim every equitable allowance; he may prove a release without pleading it; in short, he may defend himself by every thing, which shews that the plaintiff, ex cequo et bono, is not entitled to the whole of his demand, or any part of it.”- He cannot be subject to another recovery on the bond; for it makes a part of this case, that the bond has been given to the plaintiff, and the bond itself makes a part of the particular, and can never be withdrawn from the record.
Thq cases of Taylor v. Higgins and Maxwell v. Jameson certainly seem to shew, that where a surety has taken in the first bond, not by actual payment, but by executing a new bond, to which the principal is no party, he cannot before paying this new bond, support an action for money paid to the defendant’s use, against his principal. I admit that those cases are applicable to the present, unless there be something in the distinction I am about to state. In those cases, there had been no actual or virtual payment; and it might not seem equitable, that the surety should coerce from his principal a sum of money, when it might happen that he qever would pay a cent for him. Thus Bayley, J. says, “ Then as the authorities differ, it becomes necessary to look to the reason of the thing. No money has yet come out of the plaintiff’s pocket, and non constat that any ever will; for if he recovers from the defendant in the present action, still it is possible that he may never pay it over to Batson & Co. Then, the period of time at which his remedy *111 against the defendant shall commence, has not yet arrived.” And Holroyd, J. says, “ In order to support this action, the debt must have been extinguished, either by an actual or a virtual payment of the money by the plaintiff to the defendant’s use.” Now, has not the plaintiff here, virtually at hast, paid the amount of the bond to the obligee by the marriage, in consideration of which the obligee gave it to him ? It surely cannot be said of him, that he has paid no value for the bond, and non constat that he ever will: he has paid all that he was bound to pay; and that to the perfect satisfaction a,nd extinguishment of the claim of the obligee.
Cabell, J.
I am of opinion, that this judgment must be reversed. The evidence offered in support of the count for money paid, laid out a,nd expended, was improperly admitted. The facts disclosed by that evidence, do not prove a payment of the bond, either actual or virtual; for they were not intended, by any of the parties, to have that operation. The bond was not given up as a discharged bond; it was given as an advancement to Ellis, the surety in the bond. The delivery of it to him, with that view, must be regarded as an assignment in equity of the obligee’s interest therein, so as to enable him to recover the amount from the principal obligor, provided he should be able to pay it. Whether he is to recover it by a bill in equity, or by a suit at law, in the name of the obligee, is not now the question. It is sufficient for the present, to say, that he has not paid the bond in any manner, and therefore cannot have the action for money paid, laid out and expended. If Ellis had given any thing for the bond, with the intention of discharging it, and it had been received as a discharge by the obligee, whether the thing given were money, property, work and labour, or the consideration of marriage, then, I think, he might have maintained the action for money paid and advanced. *112 Starlde has truly stated the doctrine of the law, as the result of the cases, that the plaintiff may shew an actual payment of money, or its equivalent. 2 Stark. Law Ev. part 4. p. 99. The cases of Taylor v. Higgins and Maxwell v. Jameson, are not at all inconsistent with this position. In those cases, the plaintiff shewed no payment, either of money or its equivalent, but only a security for future payment; and the decision turned on this ground. Every body must see the difference between an actual payment, either in money, in property, or in any other valuable consideration, and a mere bond or security for future payment. The latter is, in itself, not a present payment, either actual or virtual, and it may never le p'aid. The former is a present and an actual discharge of a money obligation due from the defendant ; and that discharge being effected by a payment made by the plaintiff, in money, or in money’s equivalent, entitles him to the benefit of this equitable action. These remarks are not necessary for the decision of this case; but I have thought proper to make them, in order to prevent a misconception of my views on an important principle of the law.
Brooke, J.
I think the evidence stated in the bill of exceptions, ought not to have been allowed to go to the jury upon any of the counts in the declaration. It was insisted, that it was proper evidence upon the count for money paid, laid out and expended. It is true, the action of indebitatus assumpsit has been, since the case of Moses v. Macfarlan, considered in some respects an equitable action; but lord Mansfield's doctrine, in that case, has never been carried so far as to make it a substitute for a special action on the case, or a bill in equity. Some of the cases are cited in Taylor v. Higgins; where lord. Ellenborough, alluding to the cases in which payment by a note or bill of exchange, had been held to be an equivalent to a payment in money, and proper to sup *113 port a money count, said—“ Supposing even the case of a note of hand or bill of exchange, as the current representative of money, to have been rightly decided, still this security, consisting of a bond and warrant of attorney, is not the same as that, and is nothing like money.” In Maxwell v. Jameson, the payment by the surety, consisted in a bond by him executed and a warrant of attorney, which were received by the creditor as a satisfaction of the debt; yet this was not held sufficient to • support a money count. Now, in the case before us, though marriage is a valuable consideration, and Ellis had in that way paid it off, yet this was nothing like a payment of money. I think it right to adhere to the principle of Taylor v. Higgins; namely, that the payment of some equivalent for money, some current representative of money, will alone suffice for a payment of money. If we go further, and admit what, in a special action or in a suit in equity, might be considered as a virtual payment, to support a general money count, there will, in most cases, be a surprize on the defendant. I think the judgment must be reversed.
Tucker, P.
I am of opinion, that this action cannot be maintained. I am by no means certain, that the bond is to be considered as discharged by the gift of it to Ellis one of the obligors, even for valuable consideration ; for I find it said, that if a bond be delivered up to be cancelled, and it comes again into the hands of the obligee, he may maintain an action upon it, and the defendant can only be relieved in equity; Shep. Touchst. 70. Moreover, the gift, in this case, was certainly with no design to vacate the bond. But admitting the remedy on the bond is gone, still, upon the facts of the case, and under the counts in this declaration, the action is not sustainable. The count for money paid, laid out and expended, is not supported by proof that the bond had been discharged by the valuable consideration *114 of marriage. The proof does not correspond with the ° x x allegation; and notwithstanding the very great and increasinS liberality of the courts in supporting the equitable action of assumpsit, it is laid down, that the count for money paid can only be supported by proof of an actual payment of money or its equivalent. See 2 Stark. Ev. part 4. p. 99. and the authorities there cited, and Brooks v. Scott’s ex’or, 2 Munf. 344. And this equivalent must be some current representative of money. The case of Taylor v. Higgins seems to me peculiarly apposite. That was the case of a surety, who had given to the creditor a new bond and warrant of attorney for the debt in which he had been bound as surety, which new bond was proved to have been accepted as payment and satisfaction of the old debt. He thereupon sued the principal, and offered this as evidence of money paid, laid out and expended. The court, after considering the cases of Barclay v. Gouch, 2 Esp. Rep. 571. and Israel v. Douglass, 1 Hen. Blacks. 239. (which had been cited, and which they seemed to disapprove) was of opinion, that the-evidence did not support the action. Lord Ellenborough said—“ There is no pretence for considering the giving this new security, as so much money paid for the defendant’s use. Supposing even the case of the note of hand or bill of exchange, as the current representative of money, to have been rightly decided, still this security, consisting of a bond and warrant of attorney, is not the same as that, and is nothing like money.” Still less can it be said, that a gift in consideration of marriage is equivalent to the payment of money. For we see that the fact of the complete discharge of the bond by a valuable consideration, does not suffice, unless it be paid off in money or something of the like kind. If the consideration be not such, though the discharge may give a right of action, yet the declaration should be special, setting forth the actual consideration.
*115 In this case, the attempt to sustain the general count A . for money paid, by proof oí payment by marriage, is certainly going farther than any former case; and I do not think it, can be sustained, without an entire departure from those rules which have long been established for the government of actions. In the case of Nightingal v. Devisme, it was decided by lord Mansfield himself, the great patron of the action for money had and received, that that action would not lie for stock received to the use of the party, though an action properly framed would lie upon an assumpsit to deliver stock. And in a case decided in a sister state, it has been ruled, that a count for money paid, will not lie where property’, not money, has been paid. Lucket v. Bohannon, 3 Bibb 378.
Judgment reversed.